Marshall, Ch. J.,
delivered the opinion of the court, as follows : — The matei-ial facts in this case are- these :
The Emulous, owned by John Delano and others, citizens of the United States, was chartered to a company can-ying on tx-ade in Great Britain, one of whom was an American citizen, for the pux-pose of carrying a cax-go from Savannah to Plymouth. After the cargo was put on boax-d, the vessel was stopped in port by the embax-go of the 4th of April 1812. On the 25th of the same month, it was agreed between the master of the ship and the agexxt of the shippers, that she should proceed with her cargo to New Bedford, whex-e her owners resided, and remain there, without prejudice to the charter-party. In pux-suance of this agreement, the Emulous proceeded to New Bedfox-d, where she continued until after the declaration of wax’. In October or Novembex-, the ship ivas unloaded, and the cargo, except the pine timbex-, was landed. The pine timber was floated up a salt-water creek, where, at low tide, the ends of the timber rested on the mud, whex-e it was secure I fx-om floating out with the tide, by impediments fastened in the entx’ance of the creek. On the Vth of November 1812, the cax-go was sold by the agent of the owners, who is an American citizen, to the clainant, who is also an American citizen. On the 19th of April, a libel was filed by the *79 attorney for the United States, in the district court of Massachusetts, against the said cargo, as well on behalf of the United States of America as for and in behalf of John Delano and of all other persons concerned. It does not *1221 aPPear ^hat this seizure was made under any instructions from the J president of the United States ; nor is there any evidence of its having his sanction, unless the libels being filed and prosecuted by the law-officer who represents the government, must imply that sanction. On the contrary, it is admitted, that the seizure was made by an individual, and the libel filed at his instance, by the district-attorney, who acted from his own impressions of what appertained to his duty. The property was claimed by Armitz Brown, under the purchase made in the preceding November.
The district court dismissed the libel. The circuit court reversed this sentence, and condemned the pine timber, as enemy property, forfeited to the United States. From the sentence of the circuit court, the claimant aj>pealed to this court.
The material question made at bar is this : Can the pine timber, even admitting the property not to be changed by the sale in November, be condemned as prize of war ?
The cargo of the Emulous having been legally acquired and put on board the vessel, having been detained by an embargo, not intended to act on foreign property, the vessel having sailed before the war, from Savannah, under a stipulation to reland the cargo in some port of the United States, the re-landing having been made with respect to the residue of the cargo, and the pine timber having been floated into shallow water, where it was secured and in the custody of the owner of the ship, an American citizen, the court cannot perceive any solid distinction, so far as respects confiscation, between this property and other British property found on land at the commencement of hostilities. It will, therefore, be considered as a question relating to such property generally, and to be governed by the same rule.
Respecting the power of government, no doubt is entertained. That war gives to the sovereign full right to take the persons and confiscate the property of the enemy wherever found, is conceded. The mitigations *1231 *0^ ^is rigid rule, which the humane and wise policy of modern times -* has introduced into practice, will more or less affect the exercise of this right, but cannot impair the right itself. That remains undiminished, and when the sovereign authority shall choose to bring it into operation, the judicial department must give effect to its will. But until that will shall be expressed, no power of condemnation can exist in the court.
The questions to be decided by the court are : 1st. May enemy’s property, found on land at the commencement of hostilites, be seized and condemned as a necessary consequence of the declaration of war ? 2d. Is there any legislative act which authorizes such seizure and condemnation ?
Since, in this country, from the structure of our government, proceedings to condemn the property of an enemy, found within our territory at the declaration' of war, can be sustained only upon the principle 'that they are instituted in execution of some existing law, we are led to ask — Is the declaration of war such a law ? Does that declaration, by its own operation, so vest the property of the enemy in the government, as to support proceedings for its seizure and confiscation, or does it vest only a right, the assertion of which depends on the will of the sovereign power?
*80 [*124 The universal practice of forbearing to seize and confiscate detts and credits, the principle universally received, that the right to them revives on the restoration of peace, would seem to prove that war is not an absolute confiscation of this property, but simply confers the right of confiscation. Between debts contracted under the faith of laws, and property acquired in the course of trade, on the faith of the same laws, reason draws no distinction ; and although, in practice, vessels, with their cargoes, found in port, at the declaration of war, may have been seized, it is not believed, that modern usage would sanction the seizure of the goods of an enemy on land, which *were acquired in peace, in the course of trade. Such a proceeding is rare, and would be deemed a harsh exercise of the rights of war. But although the practice in this respect may not be uniform, that circumstance does not essentially affect the question. The inquiry is, whether such property vests in the sovereign, by the mere declaration of war, or remains subject to a right of confiscation, the exercise of which depends on the national will: and the rule which apjfiies to one case, so far as respects the operation of a declaration of war on the thing itself, must apply to all others over which war gives an equal right. The right of the sovereign to confiscate debts being precisely the same with the right to confiscate other property found in the country, the operation of a declaration of war on debts and on other property found within the country must be the same. What then is this operation ? -
Even 'Bynkershoek, who maintains the broad principle, that in war everyr thing done against an enemy is lawful ; that he may be destroyed, though unarmed and defenceless ; that fraud, or even poison, may be employed against him ; that a most unlimited right is acquired to his person and property ; admits that war does not transfer to the sovereign a debt due to his enemy ; and therefore, if payment of such debt be not exacted, peace revives the former right of the creditor ; “ because,” he says, “ the occupation which is had by war consists more in fact than in law.” He adds to his observations on this subject, “ let it not, however, be supposed, that it is only true of actions, that they are not condemned ipso jure, for other things also belonging to the enemy may be concealed and escape condemnation.”
Yattel says, that “ the sovereign can neither detain the persons nor the property of thoge subjects of the enemy who are within his dominions at the time of the declaration.” It is true, that this rule is, in terms, applied by Yattel to the property of those only who are personally within the territory at the commencement of hostilities ; but it applies equally to things in action and to things in possession ; and if war did, of itself, without any further exercise of the sovereign will, vest the property of the *enemy in the ^ sovereign, his presence could not exempt it from this operation of *• war. Nor can a reason be perceived, for maintaining that the public faith is more entirely pledged for the security of property trusted in the territory of the nation in time of peace, if it be accompanied by its owner, than if it be confided to the care of others.
Chitty, after stating the general right of seizure, says, “ But, in strict justice, that right can take effect only on those possessions of a belligerent which have come to the hands of his adversary after the declaration of hostilities.” The modern rule, then, would seem to be, that tangible property belonging to an enemy and found in the country at the commencement of *81 war, ought not to be immediately confiscated ; and in almost every commercial treaty, an article is inserted stipulating for the right to withdraw such property. This rule appears to be totally incompatible Avith the idea, that war does of itself vest the property in the belligerent government. It may bo considered as the opinion of all who have written on the/ms belli, that war gives the right to confiscate, but does not itself confiscate the property of the enemy ; and their rules go to the exercise of this right.
The constitution of the United States was framed at a time when this rule, introduced by commerce in favor of moderation and humanity, was received throughout the civilized Avorld. In expounding that constitution, a construction ought not lightly to be admitted, which would give to a declaration of war an effect in this country, it does not possess elsewhere, and which would fetter that exercise of entire discretion respecting enemy property, which may enable the government to_ apply to the enemy the rule that he applies to us.
*126] If we look to the constitution itself, Ave find this general reasoning much strengthened by the words of that instrument. That the declaration of war has only the effect of ^placing the two nations in a state of hostility, of producing a state of war, of giving those rights which war confers ; but not of operating, by its own force, any of those results, such as a transfer of property, which are usually produced by ulterior measures of government, is fairly dcducible from the enumeration of powers which accompanies that of declaring war. “ Congress shall have power ” “ to declare war, grant letters of marque and reprisal, and make rules concerning captures on land and water.” It would be restraining this clause Avithin narrower limits than the Avords themselves import, to say, that the power to make rules concerning captures on land and water, is to be confined to captures Avhich are extra-territorial. If it extends to rules respecting enemy property found within the territory, then Ave perceive an express grant to congress of the power in question, as an independent substantive power, not included in that of declaring war.
The acts of congress furnish many instances of an opinion that the declaration of war does not, of itself, authorize proceedings against the persons or property of the enemy found, at the time, Avithin the tenitory. War gives an equal right over persons and property : and if its declaration is not considered as prescribing a law respecting the person of an enemy found in our country, neither does it prescribe a laAV for his property. The act concerning alien enemies, which confers on the president very great discretionary powers respecting their persons, affords a strong implication that he did not possess those poAvers by virtue of the declaration of war. The “ act for the safe keeping and accommodation of prisoners of war,” is of the same character. The act prohibiting trade with the enemy, contains this clause : “And be it further enacted, that the president of the United States be, and he is hereby authorized to give, at any time within six months after the passage *of this act, passports for the safe transportation of any -* ship or other property belonging to British subjects, and which is now Avithin the limits ob the United States.” The phraseology of this law shows that the property of a British subject was not considered by the legislature as being vested in the United States by the declaration of war ; *82 and the authority which the act confers on the president, is manifestly considered as one which he did not previously possess.
The proposition that a declaration of war does not, in itself, enact a confiscation of the property of the enemy, within the territorry of the belligerent, is believed to be entirely free from doubt. Is there in the act of congress, by which war is declared against Great Britain, any expression which would indicate such an intention ? That act, after placing the two nations in a state of war, authorizes the president of the United States to use the whole land and naval force of the United States to carry the Avar into effect, and “ to issue to private armed vessels of the United States, commissions or letters of marque and general reprisal against tire Aressels, goods and effects of the government of the united kingdom of Great Britain and Ireland, and the subjects thereof.” That reprisals may be made on enemy property found within the United States at the declaration of war, if such be the will of the nation, has been admitted ; but it is not admitted, that in the declaration of Avar, the nation has expressed its will to that effect.
It cannot be necessary to employ argument in showing that when the attorney for the United States institutes proceedings at laAV for the confiscation of enemy property found on land, or floating in one of our creeks, in the care and custody of one of our citizens, he is not acting under the authority of letters of marque and reprisal, still less under the authority of such letters issued to a private armed vessel *The “act concerning r*,2o letters of marque, prizes and prize goods,” certainly contains noth- *- ing to authorize this seizure.
There being no other act of congress which bears upon the subject, it is considered as proved, that the legislature has not confiscated enemy property, which was within the United States at the declaration of war, and that this sentence of condemnation cannot be sustained.
One view, hoAvever, has been taken of this subject Avhich deserves to be further considered. It is urged, that, in executing the laAVS of war, the executive may seize, and the courts condemn, all property which, according to the modern law of nations, is subject to confiscation, although it might require an act of the legislature to justify the condemnation of that property which, according to modern usage, ought not to be confiscated. This argument must assume for its basis the position, that modern usage constitutes a rule which acts directly upon the thing itself, by its own force, and not through the sovereign power. This position is not alloAved. This usage is a guide Avhich the sovereign follows or abandons at his xvill; the rule, like other precepts of morality, of humanity, and even of wisdom, is addressed to the judgment of the sovereign ; and although it cannot be disregarded by him, without obloquy, yet it may be disregarded.
The rule is, in its nature, flexible ; it is subject to infinite modification ; it is not an immutable rule of laxAr, but depends on political considerations which may continually vary. Commercial, nations, in the situation of the United States, have always a considerable quantity of property in the possession of their neighbors. When war breaks out, the question, what shall be done with enemy property, in our country, is a question rather of policy than of law. The rule which we apply to the property of our enemy, will be applied by him to the property of *our citizens. Like all other ,* questions of policy, it is proper for the consideration of a department L *83 wbicb can modify it at will; not for the consideration of a department which can pursue only the law as it is written. It is proper for the consideration of the legislature, not of the executive or judiciary.
It appears to the court, that the power of confiscating enemy property is in the legislature, and that the legislature has not yet declared its will to confiscate property which was within our territory at the declaration of war. The court is, therefore, of opinion, that there is error in the sentence of condemnation pronounced in the circuit court in this case, and doth direct that the same be reversed and annulled, and that the sentence of the district court be affirmed.