NicholsoN, C. J.,
delivered the opinion of the Court.
*70 This action was commenced in the Circuit Court of Anderson County, by summons and ancillary attachment, to recover damages from the plaintiff in error, for taking from- John Diggs, intestate of defendant in error, five rifle guns, and converting them to his own use. Plaintiff in error put in two pleas — the general issue, to which there was replication — and the statute of limitations of one year, which was demurred to, and the demurrer sustained. He also gave notice of his real defense to be relied on, which was, “that the property and residence of the plaintiff, at the time of the alleged trespass, if committed, was within the military linos of the armies of the so called Confederate States of America, a military organization at open and public war with the United States, and that the defendant was an officer in the armies of the so called Confederate States of Ameri-ea, and as such, entitled to all the rights of belligerents, and that the intestate of the plaintiff was in the army of the United States at the time, and that said defendant, if he took said articles, took them as such belligerent, as he lawfully might.” The case was submitted to a jury who rendered a verdict against the plaintiff in error, on which judgment was entered, and from which • he appealed in error to this Court.
It appears from the bill of exceptions that the plaintiff in error introduced a witness who proved that “Col. Cummings was Colonel of the 19th Tennessee regiment —witness had frequently seen him at the head of his regiment dressed as a Confederate Colonel — many officers had no commissions, but Colonels always had one.” The proof was objected to and excluded from the jury *71 by the presiding Judge, on the ground that it was not the best proof of the fact that plaintiff in error was a Confederate Colonel.
We think the Court erred in excluding this evidence, but we concur Avith the counsel of defendant in error, that the error was immaterial, if upon the law it be true, that the fact of the plaintiff in error being a Confederate officer, and acting at the time in said capacity, could be no justification of the taking of the guns.
The facts of the case, upon which the question of law arises, are few and simple. About the time of the Fishing Creek battle, shown to be in December, 1861, ten Confederate soldiers came to the house of John Diggs, the intestate of defendant in error, in Anderson county, Tennessee, and demanded of the family arms. Whilst they were getting the guns out of a fodder stack, plaintiff in error rode up and directed the soldiers to take all five of the guns, which they did, and took them offj going in the direction of Fishing Creek. John Diggs, the owner of the guns, was proven to be a Federal soldier in the 2d Tennessee regiment, then absent in the Federal army.
These facts present the question whether the plaintiff in error, by virtue of his office of Colonel in the Confederate army, was justifiable in the exercise of a belligerent right in taking the guns, the property of a Federal soldier absent from home in the Federal army, the guns having been left at home in a place of concealment.
In the case of Smith v. Brazelton, ante p. 44, decided at *72 the present term, we have deduced from the authorities therein cited, the following propositions, viz.:
1. The late contest between the United States and the Confederate States was a civil war, and so recognized by the Government of the United States from its commencement: 2 Black R., 635, in Prize cases.
2. Both parties in that case were entitled to the exercise of belligerent rights during its continuance: Vattel, 425; 2 Black, 635; Cooledge v. Guthrie, by Justice Wayne, at Cincinnati; Hammond v. The State, 3 Cold., 129.
3. Upon the breaking out of the war all the citizens within the limits of the territory occupied by the respective contestants, became enemies of each other respectively; and all the property within their respective boundaries became enemy’s property as to each other. Vattel, 321-364.
4. The property of the opposing parties, whether on land or water, was subject to capture and confiscation. Vattel, 364.
5. As to the property of non-combatant or pacific enemies, the right of capture was limited to special cases, dictated by the necessary operations of the war, excluding, in general, the seizure of private property of pacific persons for the sake of gain, and the commanding military officer could determine in what cases its more stringent application was required by military emergencies. 1 Kent., 91; Brown v. The United States; 8 Cranch, 133; 2 Wallace, 419.
6. For the capture and confiscation of private prop *73 erty the military officer was responsible to bis own Government only; and could not be made accountable in the civil or municipal tribunals. 2 Wallace, 419; Cooledge v. Guthrie, by Justice Swayne in 1868; 1 Kent, 120; Dana’s Wheaton, § 356.
7. Private property, in which the hostile power had any interest, which property might be available for purposes of war, was prima facie a subject of capture: Cooledge v. Guthrie, by Justice Swayne; 2 Kent, 120; Dana’s Wheaton, § 356; Vattel, 364.
8. Either party could lawfully capture and appropriate enemy’s property within its limits, as defined by military occupation, whenever such seizure and appropriation was deemed necessary by the military authorities for the operation of the war. (Same authorities.)
Assuming the several propositions to be fully sustained by the authorities, as well as by many others that might be cited, it follows that it was competent for plaintiff in error to justify his taking of the five guns in the exercise of belligerent rights, they being enemy’s property and such property as could be made available for purposes of war. It was, therefore, erroneous in the Circuit Judge to exclude the proof that plaintiff in error was a military officer at the time of seizing the guns Eor that error the judgment is reversed and the cause remanded.