FISCHER v. PALMER, Alien Property Custodian, et al.

(District Court, M. D. Pennsylvania. January Term, 1919.)

No. 270.

1. WAR ⬸12—BILL BROUGHT BY ENEMY ALIEN—ALIEN PROPERTY CUSTODIAN.

A bill by an enemy alien, brought against the Alien Property Custodian both individually and officially, must, where it solely complains of acts committed by him in his official capacity, be treated against him in his official capacity, of which the federal District Court would have jurisdiction; the bill not being regarded as a suit against the United States.

2. WAR ⬸12—ENEMY ALIENS—ALIEN PROPERTY CUSTODIAN.

Under Trading with the Enemy Act Oct. 6, 1917 (Comp. St. 1918, §§ 3115½a–3115½j), creating the office of Alien Property Custodian, and providing for the seizure and administration of alien property, and providing for relief of those aggrieved by act of the President or by suits

⬸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

at law or in equity in the federal District Courts for the district in which the claimant resides, etc., action or suit can be maintained only in the District Court which Congress specified, for the remedy provided is exclusive of all others.

3. WAR ⊙═12—WAR POWERS OF CONGRESS—SEIZURE OF ALIEN PROPERTY.
    Trading with the Enemy Act Oct. 6, 1917 (Comp. St. 1918, §§ 3115½a–3115½j), passed by Congress after declaration of war with Germany, was a valid exercise of the war power; it being permissible for Congress to provide for the seizure and administration of alien property.

In Equity. Bill by Helen K. Fischer against A. Mitchell Palmer, individually and as Alien Property Custodian, and another. On motion to dismiss bill. Motion allowed.

Yale L. Schekter, of Philadelphia, Pa., Robert A. Stotz, of Easton, Pa., Ira Jewell Williams and Francis Shunk Brown, both of Philadelphia, Pa., and J. Fred Schaffer, of Sunbury, Pa., for complainant.
    Rogers L. Burnett, U. S. Atty., of Stroudsburg, Pa., and Spier Whitaker, of Washington, D. C., for defendant.

WITMER, District Judge. This case is under consideration on motion to dismiss, based on jurisdictional grounds.

Plaintiff filed a bill in equity, in which she has alleged that she is a native of Hanover, Germany, and intermarried with Adelbert W. Fischer, a native of Bremen, Germany, with whom she and her children have resided in the city of Philadelphia, Pa., since 1903 up to and until February, 1918, when her husband was interned in the custody of the United States government at Ft. Oglethorpe, Ga., and that she has remained and is now a resident of the city of Philadelphia. It is further stated that the defendant, A. Mitchell Palmer, is a citizen and resident of Stroudsburg, Pa., and is serving as Alien Property Custodian, having been appointed to such office pursuant to the act of Congress approved October 6, 1917 (40 Stat. 411, c. 106 [Comp. St. 1918, §§ 3115½a–3115½j]), known as the "Trading with the Enemy Act."

Briefly stated the material allegations of the bill are that—

I. The plaintiff is the owner of 995 shares (of the par value of $100 per share) of the capital stock of the Schutte & Koerting Company, a Pennsylvania corporation in business at Philadelphia and Cornwells, Pa.; such stock having been assigned and transferred to complainant by her father, Ernst Koerting, on or about February 14, 1917, prior to the beginning, and not in contemplation, of the present war between the United States and Germany, in pursuance of a contract of upwards of a year's standing preceding its consummation.

II. That after the declaration of war, to wit, on February 23, 1918, the defendant, assuming to act under the act of Congress of October 6, 1917, known as the "Trading with the Enemy Act," took possession of the property, assets, etc., of the said Schutte & Koerting Company, together with its capital stock, including the 995 shares alleged to be owned by complainant, and caused to be elected directors of

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

said corporation, and is through them carrying on the business of such corporation.

III. That the Alien Property Custodian has advertised for sale and is about to sell the assets and property so taken over by him, though it is alleged the business is on sound financial basis, and there being no danger of loss or waste, thereby threatening great and irreparable injury to the complainant.

Praying—

(a) That process be allowed in the form of a subpœna, directed to A. Mitchell Palmer, as Alien Property Custodian, and Schutte & Koerting Company, to appear and answer the bill of complaint.

(b) That the cloud upon the title of said shares of stock and property advertised be removed and quieted.

(c) That the action of the defendant Palmer may be declared illegal and in violation of complainant's rights; that an injunction issue enjoining and restraining the said company and the said Palmer, as Alien Property Custodian, from selling and offering for sale the property and stock of such corporation advertised.

On filing the bill December 13, 1918, a preliminary injunction was awarded, and on March 10, 1919, no service having been obtained on any of defendants, the United States attorney, representing A. Mitchell Palmer, individually and as Alien Property Custodian, appearing de bene esse and only for the purpose, moved the court to dismiss the bill of complaint.

[1] While the action stands against A. Mitchell Palmer, individually and as Alien Property Custodian, the bill discloses a suit against him alone as Custodian. To regard it otherwise would be inconsistent with the allegations of the bill; and it would be futile to hold otherwise, since the prayer of the bill could not be enforced against Palmer individually. The acts committed and threatened by him, as alleged by complainant, were done under right or color of authority of his office, and whether he exceeded his authority or acted without authority as such officer is the question presented by the bill. While it may not be regarded as a suit against the United States, in the light of the distinguishing case of Phila. Co. v. Stimson, Secretary of War, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570, yet being a challenge of his authority to do the things of which complaint is made, it may be maintained, as was done in that case, against the officer of the government, provided this court of this jurisdiction has power to entertain it.

[2] The act of Congress creating the office of Alien Property Custodian, in defining, regulating, and punishing trading with the enemy, and providing for the seizure and administration of such alien property, affords those aggrieved thereby a full and complete remedy and opportunity to have such grievances adjudicated. If the President, who is, by the act, invested with power over all alien enemy property, does not afford relief to a claimant, such claimant may prosecute his suits at law or in equity to establish any right, title, or interest which he may have in such money or property in the District Court of the United States for the district in which such claimant resides, or, if

a corporation, where it has its principal place of business, and if suit shall be so instituted then the money or other property of the enemy, or ally of enemy, against whom such interest, right, or title is asserted, or debt claimed, shall be retained in the custody of the Alien Property Custodian, or in the treasury of the United States, etc. That the provisions of the act were intended to afford adequate protection to the property of deserving alien enemies residing in this country, and corresponding relief when erroneously seized, is apparent, and it is not doubted but that such protection and relief is to be sought and obtained exclusively in the District Court of the habitat of the claimant.

In the case of United States v. Congress Construction Co., 222 U. S. 199, 32 Sup. Ct. 44, 56 L. Ed. 163, wherein the question was presented to court whether or not exclusive power was vested in the court designated, under Materialmen Act Aug. 13, 1894, c. 280, 28 Stat. 278, as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811 (Comp. St. § 6923), providing action on the bond should be brought in the court of the district in which said contract was to be performed, and not elsewhere, the court held that the provision restricting the place of suit operates pro tanto to displace the provision upon that subject in General Jurisdictional Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433. The United States having provided a remedy for violated rights likely to occur in the enforcement of the provisions of the act, relative to the property of alien enemies, and having consented to be sued in a designated court, to the end that injustice may not be done, the remedy provided and the court designated must be regarded as exclusive of all others. Haycraft v. United States, 89 U. S. (22 Wall.) 81, 22 L. Ed. 738; Wells v. Roper, 246 U. S. 336, 38 Sup. Ct. 317, 62 L. Ed. 755.

[3] Without regard to complainant's ability or standing to question, it is not doubted that the action of Congress enacting the Trading with the Enemy Act was a legitimate exercise of its war power. The declaration of war placed the nations concerned in a state of hostility, producing a state of war, and conferred those rights which war confers; some of them being, as conferred by the Constitution upon Congress, to make rules respecting capture on land and water. As was said by Justice Strong, in Miller v. United States, 78 U. S. (11 Wall.) 305, 20 L. Ed. 135, speaking of the power "to declare war, grant letters of marque and reprisal, and make rules respecting captures on land and water":

"Upon the exercise of these powers no restrictions are imposed. Of course the power to declare war involves the power to prosecute it by all means and in any manner in which war may be legitimately prosecuted. It therefore includes the right to seize and confiscate all property of an enemy, and to dispose of it at the will of the captor. This is and always has been an undoubted belligerent right. If there were any uncertainty respecting the existence of such a right it would be set at rest by the express grant of power to make rules respecting captures on land and water."

The subject does not call for argument. It seems sufficient to observe that the exercise of the power assumed by Congress is sanctioned by practice, dating from the American Revolution, and has been

upheld by a long line of decisions, as disclosed in Brown v. United States, 8 Cranch, 110, 3 L. Ed. 504, Miller v. United States, 11 Wall. 268, 20 L. Ed. 135, and Salamandra Ins. Co. v. N. Y. Life Ins. & Trust Co. (D. C.) 254 Fed. 852.

The motion to dismiss is allowed.