THOMAS W. MILLER, as Alien Property Custodian of the United States of America, Plaintiff, *v.* JOSEPH LAUTENBURG, Defendant.

First Department, June 6, 1924.

Vendor and purchaser — sale by Alien Property Custodian of real estate seized under Trading with the Enemy Act — marketability of title — demand served by Alien Property Custodian on attorney in fact of record owner is sufficient under Trading with the Enemy Act, § 5, subd. a, and Executive Order No. 2813, § 2, subd. b, dated Feb. 26, 1918 — Trading with the Enemy Act supplemented by Real Property Law, § 336 — facts stated in demand conclusive three months after demand recorded and indexed — demand sufficiently set forth that fee of premises was required by Alien Property Custodian — whether demand constitutes seizure immaterial in view of actual seizure — recording and indexing demand under Real Property Law, § 336, had effect of deed passing fee under Real Property Law, § 240, subd. 1, and § 245 — demand bars dower right of wife of alien owner — physical seizure sustainable under amendment to Trading with the Enemy Act — taking property is not violation of due process of law clause of Federal Constitution (5th Amendt.) — title is marketable.

A demand by the Alien Property Custodian directed to the attorney in fact of the alien owner of real property is binding on the owner under subdivision a of section 5 of the Trading with the Enemy Act and subdivision b of section 2 of Executive Order No. 2813, dated February 26, 1918.

Moreover, the provisions of the Trading with the Enemy Act are supplemented by section 336 of the Real Property Law which provides that three months after the recording and indexing of the demand it shall be conclusive of all facts recited therein.

The demand, which required that the attorney in fact of the alien owner should transfer, convey, assign and deliver all money and property, sufficiently set forth that the fee of the premises was required by the Alien Property Custodian.

It is immaterial whether the demand served on the attorney in fact constituted a seizure of the property in view of the fact that the property was physically seized thereafter.

The recording and indexing of the demand had the effect, under section 336 of the Real Property Law, of a deed to the Alien Property Custodian by the record owner of the property and by virtue of subdivision 1 of section 240, and section 245 of the Real Property Law, a fee was passed to the Alien Property Custodian.

The demand was sufficient to bar the dower rights of the wife of the alien owner, if he was married, since under the law as it existed in 1918, the nationality of the wife conformed to that of her husband and she was, therefore, an alien enemy and the seizure of the property operated on her interest, and furthermore the amount which the Alien Property Custodian received for the property stands in lieu thereof for purposes of relief and remedy by the alien owner.

The physical seizure of the property was a continuing act and was, therefore, justified and sustainable under the amendment of November 4, 1918, to the Trading with the Enemy Act.

The contention that the taking of the property constituted a violation of the due process of law clause in the Federal Constitution (5th Amendt.) is answered by the fact that the Trading with the Enemy Act is a war measure.

Accordingly, in this action in which it appears that the defendant purchased property from the Alien Property Custodian and refused to complete the title on the ground that it was unmarketable, a judgment in favor of the plaintiff must be rendered.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Fraser, Speir & Meyer* [*Schuyler M. Meyer* of counsel; *Louis Dean Speir* with him on the brief], for the plaintiff.

*Abraham Vogel*, for the defendant.

FINCH, J.:

During the period of the war the then Alien Property Custodian of the United States, pursuant to the provisions of the Trading with the Enemy Act, seized in the city of New York and elsewhere real property belonging to various alien enemies. Among the parcels of real property seized were the premises 233–235 West One Hundred and Seventh street, New York city, belonging to Ernst Haertel, of Leipzig, Germany, an enemy alien.

Under authority from the President of the United States, as provided by the Trading with the Enemy Act, the present Alien Property Custodian entered into a contract for the sale of the said premises to the defendant. Thereafter the defendant applied to the Title Guarantee and Trust Company for a policy of title insurance. On the day set for closing of title the Title Guarantee and Trust Company declined to insure the title upon a number of specified grounds, and the defendant accordingly declined to accept performance on the ground that the title was unmarketable.

The questions raised by the title company and submitted to this court for determination, are as follows:

(1) Was the demand directed to Heinrich Eulenstein, under the Trading with the Enemy Act, and the executive orders of the President issued thereunder, sufficient notice to the enemy alien, Ernst Haertel, of the seizure of the property in question?

It appears that within six months preceding the demand said Eulenstein had executed a lease of the entire property as attorney for the record owner. Section 5, subdivision (a), of the Trading with the Enemy Act (40 U. S. Stat. at Large, 415) provides that the President may make such rules and regulations not inconsistent with law as may be necessary and proper to carry out the provisions of the act, and pursuant thereto an executive order was issued (No. 2813, dated Feb. 26, 1918), section 2, subdivision (b), whereof provides in part: " Notice of any demand made by the Alien Property Custodian may be given to any person who, alone or jointly with others, may hold or have the custody or control of or

39

may be exercising any right, power, or authority in or over or may be performing any duty concerning the money or other property mentioned in the demand; * * *." (See Official Bulletin March 2, 1918, vol. 2, No. 247, p. 6.)

It is clear that the execution of a lease by Eulenstein, as attorney in fact for the owner, was such an exercise of right, power or authority over the property as to permit service of notice of demand upon him.

Moreover, the provisions of the Trading with the Enemy Act are supplemented by section 336 of the Real Property Law of this State, which provides as follows: " Effect of recording demands or requirements of Alien Property Custodian. The recording in any county clerk's or register's office of a demand or requirement against real property described therein, made by or on behalf of the Alien Property Custodian under and pursuant to the Trading with the Enemy Act adopted by the United States Congress and approved October sixth, nineteen hundred and seventeen, or any act amendatory thereof or supplemental thereto, or any executive order or proclamation issued in pursuance thereof, when duly indexed against the name of the person or corporation whose property has thereby been demanded or required, shall have the same force and effect as the making of, delivery and recording of a deed of such real property or interest therein by such person or corporation to said Alien Property Custodian. All recitals contained in any such demand or requirement, and in any deed made by such Custodian heretofore or hereafter recorded of all facts required or permitted by said acts, proclamations or executive orders to be found or determined by said Alien Property Custodian, and all recitals of conclusions or determinations by said acts, proclamations or executive orders authorized to be made by him, and all recitals of acts or things done by said Custodian or his agents in respect to the seizure of said property shall be evidence of the facts, conclusions, determinations, acts and things so recited in any court of this State in any action or proceeding affecting the title to or ownership of such real property. Three months after this section takes effect and the recording of the instrument containing such recitals, the same shall become conclusive evidence of all such facts, conclusions, determinations, acts and things as are so recited therein in any action in any court affecting the title to or ownership of said land, unless said action shall have been commenced before the expiration of such three months." (See Laws of 1921, chap. 435, adding to Real Prop. Law, § 336.)

It is alleged by the plaintiff to be conceded that the original demand was duly recorded and indexed in the New York county

register's office on September 24, 1923, and that more than three months have elapsed.  The defendant has in no way disputed the alleged concession.  It follows, therefore, that the facts set forth in the demand that said Eulenstein held the premises for and on account of the alien enemy is conclusive evidence of that fact.

(2) Does the demand sufficiently set forth that the fee of the premises is required by the Alien Property Custodian within the provisions of the aforesaid act and the executive orders and proclamations of the President therein provided for?

The wording of the demand was: " * * *  I hereby require that the said money and property shall be by you conveyed, transferred, assigned, delivered, and paid over to me as Alien Property Custodian * * *."

Executive order No. 2813, section 2, subdivision (a), provides that a demand as aforesaid shall be deemed to include " every right, title, interest, and estate of the enemy in and to the money or other property demanded, as well as every power and authority of the enemy thereover."  These words were expressly amplified by section 1, subdivision (c), of said order, further providing: " The words ' right,' ' title,' ' interest,' ' estate,' ' power,' and ' authority ' of the enemy, as used herein, shall be deemed to mean, respectively, such right, title, interest, estate, power, and authority of the enemy as may actually exist and also such as might or would exist if the existing state of war had not occurred, and shall be deemed to include, respectively, the right, title, interest, estate, power, and authority in law or equity or otherwise of any representative of or trustee for the enemy or other person claiming under or in the right of, or for the benefit of, the enemy."  (See Official Bulletin March 2, 1918, vol. 2, No. 247, p. 6.)

There can be no question that the demand included all interest of whatsoever character the alien owner possessed.  The only possible argument is that Haertel might not have owned the fee and, therefore, that the Alien Property Custodian might not have acquired it.  This is disposed of by the fact that Haertel is the fee owner of record.

(3) Was such notice, so served, a seizure within the meaning of the said act, and did the fee title to such real estate pass to and vest in the Alien Property Custodian thereby?

This question, in so far as the last portion thereof is concerned, is disposed of by the answer to the preceding question.  In this connection, also, under section 336 of the Real Property Law (*supra*), the recording and indexing of the notice as aforesaid had the effect of a deed to the Alien Property Custodian by the record owner of the property.  Section 240, subdivision 1, of the

Real Property Law provides that the use of the word " heirs " or other words of inheritance are not necessary to convey a fee, and section 245 of said law provides that a deed, unless expressly limited, passes the entire interest of the grantor. By section 7, subdivision (c), of the Trading with the Enemy Act, as amended on November 4, 1918, it was also provided that " Any requirement made pursuant to this Act, or a duly certified copy thereof, may be filed, registered, or recorded in any office for the filing, registering, or recording. of conveyances, transfers, or assignments of any such property or rights as may be covered by such requirement \* \* \*; and if so filed, registered, or recorded shall impart the same notice and have the same force and effect as a duly executed conveyance, transfer, or assignment to the Alien Property Custodian so filed, registered, or recorded." (See 40 U. S. Stat. at Large, 418, § 7, subd. c, as amd. by 40 id. 1020, chap. 201.)

An answer to the first portion becomes immaterial in view of the fact that later there was an actual physical seizure of the property which the Alien Property Custodian was authorized to make by executive order dated October 12, 1917, authorizing the taking of all such measures as might be expedient to administer or carry out the Trading with the Enemy Act.

(4) Is the demand, which makes no mention of wife of Ernst Haertel, sufficient to bar her dower right?

It does not appear that Haertel was married, and this, of course, it was impossible for the Alien Property Custodian to ascertain. Assuming, however, that he was married, then under the law as it existed in 1918, the nationality of the wife conformed to that of the husband (U. S. R. S. § 1994; Expatriation Act of 1907 [34 U. S. Stat. at Large, 1228, 1229], §§ 3, 4, respectively; 4 U. S. Comp. Stat. 1916, §§ 3948, 3960, 3961),\* and she, also, upon the declaration of war became an alien enemy, and as such the seizure operated on her interest in the property.

Another and complete answer to the question of dower presented is the fact that section 7, subdivision (c), of the Trading with the Enemy Act, as amended on November 4, 1918, provides that " The sole relief and remedy of any person having any claim to any \* \* \* property \* \* \* conveyed \* \* \* or seized \* \* \* shall be that provided by the terms of this Act, and in the event of sale or other disposition of such property \* \* \* shall be limited to and enforced against the net proceeds received therefrom and

---

\* Since repealed by Married Women's Naturalization Act of 1922 (42 U. S. Stat. at Large, 1022), §§ 6, 7, approved September 22, 1922. See 42 id. 1021, chap. 411; Id. 1022, §§ 3, 4.— [REP.

held by the Alien Property Custodian or by the Treasurer of the United States." (See 40 U. S. Stat. at Large, 1020, 1021, chap. 201, amdg. 40 id. 418, § 7, subd. c.)

(5) Was the physical seizure of the property sufficient notice to the alien enemy of the requirement of the Alien Property Custodian, and to otherwise cure any alleged defects there might be in the original notice, so as to vest in the Alien Property Custodian the fee of said premises?

The physical seizure of the property was made on August 5, 1918, and was authorized under executive order dated October 12, 1917, authorizing the Alien Property Custodian to take all such measures as might be necessary or expedient to administer or carry out the Trading with the Enemy Act. Moreover, the act was amended on November 4, 1918, so as to provide, in addition to requiring the property to be conveyed as aforesaid, as follows: " Or the same may be seized by the Alien Property Custodian; and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this Act." (See 40 U. S. Stat. at Large 1020, chap. 201, amdg. 40 id. 418, § 7, subd. c.)

It is further provided by the amendment of March 28, 1918, that said Custodian shall be vested with all of the powers of a common-law trustee in respect of all property other than money, and shall have power to manage the same, " or make any disposition thereof * * * by sale or otherwise, and exercise any rights or powers which may be or become appurtenant thereto or to the ownership thereof in like manner as though he were the absolute owner thereof." (40 U. S. Stat. at Large, 460, chap. 28, § 1, amdg. 40 id. 423, § 12.) The seizure of the property on August fifth was a continuing act, and hence was also justified by and may be sustained under said amendment of November fourth. It has been held that property required to be transferred and property seized stand on the same footing. (*Central Union Trust Co.* v. *Garvan*, 254 U. S. 554, where Mr. Justice HOLMES said: " The argument on the original words of the act in view of the manifest purpose seems to us to be strong, but it appears to us to be much strengthened by the amendments of later date. By the act of November 4, 1918, c. 201, 40 Stat. 1020, § 7(c) was amended among other things by adding after the requirements of transfer ' or the same may be seized by the Alien Property Custodian; and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this Act.' This shows clearly enough the peremptory character of this first step. It cannot be supposed that a resort to the Courts is to be less immediately effective than a taking with the strong hand.")

In answer to the contention of the defendant that such taking

of property is not in accord with the due process clause of the Constitution (U. S. Const., Fifth Amendment), it is sufficient to point out that such due process clause gives way before a war measure which finds its sanction in the constitutional provision " to declare war, grant letters of marque and reprisal, and make rules concerning captures on land and water." (U. S. Const. art. 1, § 8, subd. 11.) As was said by Mr. Justice VAN DEVANTER, in *Stoehr* v. *Wallace* (255 U. S. 239, 241):

" The Trading with the Enemy Act, whether taken as originally enacted, October 6, 1917, c. 106, 40 Stat. 411, or as since amended, March 28, 1918, c. 28, 40 Stat. 459, 460; November 4, 1918, c. 201, 40 Stat. 1020; July 11, 1919, c. 6, 41 Stat. 35; June 5, 1920, c. 241, 41 Stat. 977,* is strictly a war measure and finds its sanction in the constitutional provision, Art. I, § 8, cl. 11, empowering Congress ' to declare war, grant letters of marque and reprisal, and make rules concerning captures on land and water.' *Brown* v. *United States,* 8 Cranch, 110, 126; *Miller* v. *United States,* 11 Wall. 268, 305.

" It is with parts of the act which relate to captures on land that we now are concerned. They invest the President with extensive powers respecting the sequestration, custody and disposal of enemy property."

And again:

" The plaintiff further objects that the shares, altho claimed by and standing in the name of the New York corporation, which concededly was neither an enemy nor an ally of an enemy, were seized and transferred to the name of the Alien Property Custodian in virtue of a determination by an executive officer in an *ex parte* administrative proceeding that they belonged to an alien enemy,— the gist of the objection being that the shares could not be taken from the New York corporation consistently with due process of law without first according it a hearing on its claim in a court of justice. The objection rests on erroneous assumptions and is not tenable.

" That Congress in time of war may authorize and provide for the seizure and sequestration through executive channels of property believed to be enemy-owned, if adequate provision be made for a return in case of mistake, is not debatable. *Central Union Trust Co.* v. *Garvan* [254 U. S. 554]. There is no warrant for saying that the enemy ownership must be determined judicially before the property can be seized; and the practice has been the

---

* Since amd. by 41 U. S. Stat. at Large, 1147, chap. 76; 42 id. 351, chap. 13; Id. 1065, chap. 13; Id. 1511, chap. 285.— [REP.

other way.   The present act commits the determination of that question to the President, or the representative through whom he acts, but it does not make his action final.   On the contrary, it distinctly reserves to any claimant who is neither an enemy nor an ally of an enemy a right to assert and establish his claim by a suit in equity unembarrassed by the precedent executive determination.   Not only so, but pending the suit, which the claimant may bring as promptly after the seizure as he chooses, the property is to be retained by the Custodian to abide the result and, if the claimant prevails, is to be forthwith returned to him. Thus there is provision for the return of property mistakenly sequestered; and we have no hesitation in pronouncing it adequate, for it enables the claimant, as of right, to obtain a full hearing on his claim in a court having power to enforce it if found meritorious.''

Thus said seizure was sufficient as between Haertel and the Alien Property Custodian.   The giving and recording of the written demand furnished, in addition, such protection as is given by a complete chain of record title to those purchasing from the Alien Property Custodian.

The questions submitted are all answered in the affirmative, the title of the plaintiff held to be valid, and judgment directed to be entered accordingly, with costs to the plaintiff.

DOWLING, SMITH, MERRELL and McAVOY, JJ., concur.

Judgment directed for plaintiff, with costs.   Settle order on notice.