### PAPE et al. v. HOME INS. CO.
### Civil Action No. 8—166.

District Court, S. D. New York.

Feb. 16, 1943.

Hill, Rivkins & Middleton, of New York City, for plaintiff.

Duncan & Mount, of New York City (Frank A. Bull, of New York City, of counsel), for defendant.

BYERS, District Judge.

The plaintiffs seek to recover $12,167.61 as for a loss arising under the defendant's fire insurance policy No. 11637, dated October 13, 1934, expired October 18, 1936.

The policy covered cotton wherever located in Europe, except Russia and Germany, and the 350 bales involved were in Barcelona, Catalonia, Spain, on October 6, 1936, when the incidents upon which plaintiffs rely had their inception.

The evidence consists solely of the recitals in a stipulation of facts which constitutes Exhibit 1.·

An epitome of the material happenings may be thus stated as the findings of fact:

These bales had been stored in a "location" known as Muelle de Espana since about June 24, 1936, and were the property of the plaintiffs in trust for their bank, Guaranty Trust Company of New York, and were covered by the terms of the said policy.

Civil war in Spain broke out about July 19th of that year, and brought in its train the conventional disorders of riot, robbery and bloodshed. Police and military protection were insufficient to cope with the conditions which thus came to pass, and neither life nor property was safe or reasonably secure.

On October 6, 1936, a Committee representing the National Confederation of Labor, which itself possessed no governmental status, notified public warehouses, cotton importers and banks in Barcelona that it was taking over all cotton in that city for delivery to Industrial Cotton Committee; as to that body the stipulation is that it was "a semi-official duly constituted body depending from the Spanish Government at Madrid".

If the case were to turn upon the constituency of that Committee as an instrumentality of government, there would be such a deficiency of proof as to cause a derail of decision for inability to arrive at destination.

Catalonia was an autonomous republic in northeastern Spain, which is stipulated to have been dependent upon and cooperating with the Spanish Republican Government, but what that means in terms of the episodes here involved is not made to appear.

The notice given by the Labor Committee is assumed to have been given to the plaintiffs in legal effect, although the actual recipient is not named. Perhaps it was Banco de Vizcaya of Barcelona, which seems to have caused the cotton to be delivered on June 24, 1936, at Muelle de Espana.

A printed notice was posted on warehouses and other places containing cotton, dated October 8, 1936, reading: "All stocks of cotton stored in this deposit are taken over by the National Committee of Relations of the Fabrile and Textile Industry—C N T".

That was the Committee duly appointed by and representing the Labor Committee.

The control thus asserted was the subject of an undertaking to transfer to the said Cotton Committee on October 6, 1936 (Stipulation, Par. 12).

The United States Consul at Barcelona conferred on October 8, 1936, with the Catalan Counselor of Economy, and two days later an official thereof assured the United States Consul that the Catalan Government would guarantee payment for all cotton that was or might be taken over. On October 17, 1936, this undertaking was formally stated in a communication to the United States Consul which refers to "the bales of raw cotton belonging to North American citizens, which have been the subject of attachment in the Catalan region, and take pleasure in advising you, with the object of tranquilizing you and the parties concerned, that while the recording and checking of the said attachments is being made, this Cheralitat of Catalonia takes upon itself the care of North American interests and will in due time determine definitely the reimburse-

ment of the amount represented by the said attachments."

The undertaking was performed in this wise: On December 16, 1936, 292,206.45 free pesetas were paid by the Catalan Government for said 350 bales of cotton through International Banking Corporation to whom plaintiffs' Barcelona agent delivered bills of lading covering the said bales. That corporation acted for the plaintiffs in receiving the money, and apparently for the Cotton Committee in receiving the bills of lading.

The pesetas realized $18,632.39 United States currency, and the September, 1936, value in Barcelona of the 350 bales @ $88.-00 would have been $30,800.00 expressed in dollars, and there is no evidence that it was less in the following month. The action is to recover the difference between these sums, or $12,167.61.

The evidence unmistakably establishes that the cotton was not destroyed by fire or otherwise; it was simply taken into custody, then into possession—attached is the term which has been quoted—first by a nondescript but potent instrumentality, and later possession is shown in a Cotton Committee having some official status, and then the Government of Catalonia assumed financial responsibility for what had taken place to the extent and in the manner which has been stated. It may be inferred that but for an unfavorable fluctuation in foreign exchange the loss would not have been sought to be visited upon the defendant under its policy of fire insurance.

That such was the nature and character of the policy is too clear for argument or discussion. It is called a fire insurance policy and provides that the insured (the plaintiffs) having paid the defendant $500.-00 "for insuring against loss or damage by Fire, as hereinafter provided, the property hereinafter described, in the sum or several sums following, namely:"

Then follow three typewritten sheets, to the last of which are attached five typed riders, all of which are inserted prior to some twenty printed paragraphs which complete the body of the document itself. All of these printed paragraphs are compatible with the essential character of the policy.

The typed pages clearly indicate that the character of the property insured is cotton in Europe, other than in Russia or Germany.

The following provisions are quoted from the typed matter:

"11. Loss, if any, payable on the basis of the actual market value at time and place of loss, such loss, shall be payable in New York Exchange to Banks, Bankers and other parties as interest may appear, provided this Company receives written notice of such interest within thirty (30) days after loss, but otherwise shall be adjusted with and payable to Pape, Williams & Company."

"16. This policy also covers cotton as described herein wherever located in Spain and Poland against loss or damage caused by * * * (3) Insurrection; (4) Riot; (5) Riot attending a strike; (6) Civil War; (7) Civil Commotion; (8) Military or Usurped Power; (9) Bombardment; whether naval or military, including aerial craft (hostile or otherwise) and bombs, shells and/or missiles dropped or thrown therefrom or discharged thereat; (10) Fire and/or explosion directly caused by any of the foregoing; whether originating on the premises or elsewhere; * * *

"(b) Warranted no claim to attach hereto for delay, deterioration, loss of market or any consequential loss, or for confiscation or authorized destruction by duly constituted governmental or civil authorities of the country in which the property is situated."

"18. This policy shall remain in force for the entire term of the policy to October 18th, 1935 and cannot be cancelled by either the assured or the Company." (Expiration date October 18, 1936, by rider.)

In the absence of the above-quoted paragraph 16, it would be clear that a loss not caused by fire would fall without the coverage of the policy, but seemingly the parties intended to render the insurance applicable to a loss not resulting from the total or partial destruction of cotton by fire, or they would not have employed the language that the policy "also covers cotton as described herein wherever located in Spain * * * against loss or damage caused by * * * Riot; * * * Civil Commotion; * * * Military or Usurped Power; * * * Fire * * * directly caused by any of the foregoing * * *".

Since loss by fire was the main purpose of protection, it was not necessary to specify that in subdivision (10) of paragraph 16, save to make it clear that the enumerat-

ed causes of loss did not exclude a fire loss resulting from any of them.

Since the intention of the parties was to extend the coverage of the policy to a non-fire loss, it remains to inquire whether the facts demonstrate a loss resulting from such an extended coverage.

Clearly there were Riot and Civil Commotion; clearly the cotton was "attached" by a "Usurped" (i. e. Usurping?) Power, i. e., the Labor Committee, before the expiration date of October 18, 1936; and but for the sanction given to the action of the Cotton Committee by the Catalan Government in the payment of the 292,206.45 pesetas, the entire loss would have been the subject of the present controversy, instead of about 40% of it.

The defendant leans heavily on paragraph 16(b) above-quoted, on the theory that the plaintiffs' loss is consequential, i. e., a loss in exchange due to its failure to convert the payment in pesetas at a favorable rate; and somewhat languidly, I think, upon the argument that this loss was within the exception created by 16(b) because it was in effect "confiscation * * * by duly constituted governmental or civil authorities of the country (Spain) in which the property is situated".

The factual recital reveals that the Government did not intervene until the "attachment" had ripened into possession on the part of the "Cotton Committee". As has been said, the identity of that body as an agency of government has not been sufficiently revealed to support the inference that whatever it did was undertaken and accomplished as a governmental enterprise.

That the right of confiscation pertains alone to sovereignty probably will be conceded; and that it is customarily resorted to against a subject, citizen, or enemy, for protection of the rights of the sovereign. See discussion in Brown v. United States, 8 Cranch 110, 3 L.Ed. 504.

The stipulated facts portray no such instance of confiscation by the sovereign power of either Catalonia or Spain, and the argument on that score need not be further considered.

As its final and persuasive contention, the defendant maintains that the plaintiffs' loss is really consequential upon their failure to sell the pesetas at so favorable a figure as to enable them to close their negotiations with the Catalan Government with-

out loss, and hence that the result is not compensable under the policy.

It is to be remembered that under paragraph 11, which has been quoted, loss is payable on the basis of market value at time and place of loss "in New York Exchange" etc.

If the transaction with the Catalan Government had been undertaken as an accord under the foregoing provision, the defendant's position might be sound. The evidence, however, does not bear that interpretation, as will be seen from the letter written by defendant on the subject, on December 5, 1936:

"American Foreign Insurance Association
"80 Maiden Lane
"New York
"Harry Austin, General Manager
"December 5th, 1936.
"Messrs. L. A. Wight & Co.,
"111 John Street,
"New York City.
"Re: Home Insurance Company
Policy No. 11637
Pape, Williams & Company
"Gentlemen:

"Referring to our telephone conversation of today with Mr. Pape and your Mr. Steains we wish to advise you that insofar as the Home Insurance Company may ultimately be interested as Underwriters under the above mentioned policy, there is no objection to any settlement that Messrs. Pape, Williams & Company may make with the Madrid or Catalan Authorities whereby they accept reimbursement in pesetas for their cotton in Spain.

"This action on our part is without prejudice and is not to be construed as an admission of liability on the part of the Underwriters nor as a waiver of the rights of the insurance company. It is merely intended to interpose no obstacle to the assured taking such action as they may deem most advisable under the circumstances.

"Yours very truly,
"Harry Austin
"Attorney."

The transactions which have been recited of December 16th were then without prejudice to either party and cannot affect the question of the defendant's contractual liability.

The loss in exchange was not a loss in market or any consequential loss, but was the direct effect of the plaintiffs' loss of their cotton which under the terms of the

policy was to be compensated to them in "New York Exchange". To the extent that what they collected, in the required effort to minimize the defendant's loss, fell short of the sum they were entitled to receive for a loss arising under the policy, the defendant must compensate them.

It is not asserted that there was any delay in giving notice of loss to the defendant, and I fail to see how it is any answer to the plaintiffs' claim, to assert that more adroit trading in exchange either in Barcelona or New York, even if demonstrable, should be held to alter or modify the contractual duty assumed by the defendant when it issued this policy and collected premiums in payment of the obligations therein nominated.

By way of conclusion, it results that the plaintiffs are entitled to recover judgment according to the prayer of the complaint.