**UNITED STATES ex rel. VON HEYMANN v. WATKINS, District Director of Immigration, etc.**

No. 65, Docket 20332.

Circuit Court of Appeals, Second Circuit.

Jan. 17, 1947.

David S. Kumble and George C. Dix, both of New York City, for relator-appellant.

John F. X. McGohey, U. S. Atty., of New York City (Stanley H. Lowell, Asst. U. S. Atty., of New York City, of counsel), for respondent-appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The appellant is a native of Germany, born on January 12, 1909, who emigrated to Costa Rica in 1935 and there engaged in business. He has never lost his original German citizenship.

He was interned in this country, pursuant to an order of the Attorney General, made on April 30, 1942, under the authority of a proclamation of the President, dated December 8, 1941, No. 2526, issued by virtue of the provisions of § 4067, R.S., as amended, 50 U.S.C.A. § 21, as an enemy alien within the United States. While he was so interned, the President on September 8, 1945, No. 2662, issued a proclamation which provided, inter alia, that, "All alien enemies now within the continental limits of the United States (1) who were sent here from

other American republics for restraint and repatriation pursuant to international commitments of the United States Government and for the security of the United States and its associated powers and (2) who are within the territory of the United States without admission under the immigration laws are, if their continued residence in the Western Hemisphere is deemed by the Secretary of State prejudicial to the future security or welfare of the Americas as prescribed in Resolution VII of the Inter-American Conference on Problems of War and Peace, subject upon the order of the Secretary of State to removal to destinations outside the limits of the Western Hemisphere in territory of the enemy governments to which or to the principles of which they have adhered." The Secretary of State determined that the relator was an enemy alien whose continued residence in the Western Hemisphere was so prejudicial and he was taken to Ellis Island, N. Y., as one step in his removal. While he was held interned there, but before any order for his removal had been made, his application for a writ of habeas corpus was granted. The writ was dismissed after hearing and this is his appeal from that order.

■ There is no dispute as to the relator's identity, or as to the fact that he is a native born German who is still a citizen of that country, or as to the fact that the executive branch of the government has determined that his continued residence in the Western Hemisphere is prejudicial as above stated. He relies on two grounds for reversal. The first is that he cannot be interned or removed under that section without resort to judicial action under § 23 of the same title. We hold adversely to the appellant on his point on the authority of our recent decision in United States ex rel. Schlueter v. Watkins, 158 F.2d 853. The second is that he was unlawfully brought to the United States by agents of this government and, consequently, is not "within" this country under the provisions of § 21 of Title 50 U.S.C.A.

It was alleged in the petition for the writ that "On March 5, 1942 relator, against his will, was taken into custody by the police of Costa Rica and held incommunicado until April 2, 1942, at which date he was taken into custody by the United States authorities and removed against his will * * * to the Internment Camp at Crystal City, Texas. The relator has been detained at various internment camps in this country until August 29, 1945, on which date he was transferred to Ellis Island, New York for the purpose of being deported to Germany." The return did not deny that relator was being held for deportation to Germany. To support the remainder of what was alleged as above, proof was offered "that on April 2, 1942, the relator was taken into custody in Costa Rica by authorities of the United States Government and was removed to Port Limon and there placed on board the United States Army Transport S. S. Florida against his will, and then removed to Camp Blanding, Florida, where he arrived on April 9, 1942; he was then transferred by the United States Army to the detention camp at Camp Kennedy in Texas on May 2, 1942; thereafter, in September, 1944, the relator was transferred to the internment camp at Fort Lincoln, North Dakota; and in August, 1945 was removed from North Dakota to Ellis Island, New York."

■ This offer of proof was excluded and the exclusion is now relied on to show reversible error, the theory of that being that the relator was unlawfully compelled by this government to be "within" the United States. The offered proof, does not, however, detract from the force of the appellant's admission in his petition that he was taken into custody in Costa Rica by its police and held until he was brought here by this government. We take that to mean that he was turned over to agents of the United States in Costa Rica by the Costa Rican government for the purpose of being brought to this country for internment. That being so, the agents of the United States obtained the custody of him lawfully in Costa Rica since it must be assumed for present purposes that the acts of the Costa Rican government in causing his arrest, detention, and delivery to agents of this country within Costa Rica were all lawful. The legality of governmental acts performed by a foreign sovereign within its own territory is not reviewable in our courts. Un-

derhill v. Hernandez, 168 U.S. 250, 18 S. Ct. 83, 42 L.Ed. 456; Banco De Espana v. Federal Reserve Bank of New York, 2 Cir., 114 F.2d 438; Hewitt v. Speyer, 2 Cir., 250 F. 367.

The lawful custody of the appellant by the Costa Rican authorities having been there relinquished by them to the agents of the United States for the purpose of transporting the relator to this country, he was lawfully brought here by those agents, whether or not that was done against his will. He was therefore "within" this country and amenable to its laws as soon as he arrived and thereafter while there. We do not find it necessary to decide what his status in that respect would have been had the agents of the United States unlawfully arrested him in Costa Rica and then brought him here.

Section 21 of Title 50 U.S.C.A. is a statute which was originally passed by Congress in 1798 and it, together with the action of the executive department under it, is the only basis on which the restraint of the appellant at Ellis Island is justified by the appellee, who is the District Director of Immigration and Naturalization for the District of New York. As a native of Germany who is within the United States and has not become an American citizen by naturalization, the appellant is in a classification covered by the statute. The determination that he was one of that type of alien enemies who should not be permitted to reside here was for the executive branch to make in accordance with the presidential proclamation and is not reviewable in the courts. United States, ex rel. D'Esquiva v. Uhl, 2 Cir., 137 F.2d 903.

The statute deals with the right of the public to protection, in either actual, or threatened, time of war, from danger caused by the presence of those persons therein described and the power of Congress to meet the danger in the ways chosen is plain. De Lacey v. United States, 9 Cir., 249 F. 625, L.R.A. 1918E, 1011. As was said by Mr. Justice Washington in Lockington v. Smith, Fed.Cas.No.8,448, "It seems perfectly clear, that the power to remove was vested in the president, because, under certain circumstances, he might deem that measure most effectual to guard the public safety."

But though the statute under which the appellee is restraining the relator pursuant to executive orders is applicable, it does not follow that the present restraint is lawful. It is, we know, for the purpose of removal to Germany and not for continued internment in this country. The executive orders are a justification only in so far as they are within the statutory provisions. Those provisions, presently of prime importance, are that the President is authorized "to provide for the removal of those (persons in the situation of the relator) who, not being permitted to reside within the United States, refuse or neglect to depart therefrom; * * *." It does not appear that this relator has ever refused, or except because of his internment, ever neglected, to depart.

His present restraint by the respondent is unlawful in so far as it interferes with his voluntary departure, since the enforced removal, of which his present restraint is a concomitant, is unlawful before he does "Refuse or neglect" to depart.

Consequently the order is reversed and the cause is remanded to the district court with directions to grant the writ unless the respondent shows, within a reasonable time to be fixed by that court, that the relator has refused or neglected to leave the country, after having been given a reasonable time so to do unhampered by his present restraint.