## UNITED STATES ex rel. JAEGELER v. CARUSI et al.

### No. M-1213.

District Court, E. D. Pennsylvania.

July 15, 1947.

George C. Dix, of New York City, and Gordon Butterworth, of Philadelphia, Pa., for relator.

Gerald A. Gleeson, U. S. Atty., and James P. McCormick, Asst. U. S. Atty., both of Philadelphia, Pa., for respondents.

KIRKPATRICK, District Judge.

■ Most of the questions of law raised by the relator have already been decided against him by various courts of the United States, some of them, many times. The only one of them which need be mentioned is that based upon the restrictive phrase "Whenever there is a declared war" with which the Enemy Alien Act, 50 U.S.C.A. § 21 et seq., begins.

When Congress passed the Act the members believed that they stood upon the threshold of a war. It was also anticipated, with reason, that hostilities might begin and continue over an indefinite time without a formal declaration of war. Congress was also confronted with what it conceived to be the constitutional limitation of Article 1, Section 9 of the Constitution and for that reason, as well as possibly a reluctance to commit the assumption of the drastic powers of the Act to judgment of the President alone, chose to make the executive power dependent upon the existence of a "declared" war or actual or threatened invasion.

It is not likely that Congress was oblivious of the possibility that actual hostilities might end before a peace treaty became effective to end the "declared" war. Nevertheless they put no terminal limitation upon the power of the President short of the end of the declared war, although they might easily have limited it to the end of hostilities. It seems, therefore, that the intention of Congress was to make the powers of the President coincide and end with a state of war in the technical sense—begin with the declaration and end with the treaty. The fact that the aliens subject to the presidential power were described as natives or subjects of the "hostile" nation does not indicate a different intention. The words are naturally and logically descriptive of subjects of a nation as to which a state of war exists and avoid circumlocution.

■ However, the traverse raises the fact question that, by reason of physical restraint, plus action of the State Department by which all American and foreign governments have been induced to refuse visas to the relator, he is not able to depart from the United States voluntarily to a country of his choice. The Alien Enemy Act authorizes the President to "provide" for the removal of only such enemy aliens who, not being permitted residence in the United States, neglect or refuse to depart therefrom. The substance of the traverse is that the President is "providing" for the relator's removal to Germany before he has refused to depart. Of course, he has refused and is refusing to go to Germany but his position is that the refusal contemplated by the Act means refusal to leave the country after free opportunity has been afforded him to go where he pleases.

The question thus raised was alluded to at the argument but was not fully discussed. I think it proper the fact issue be tried.