UNITED STATES ex rel. JAEGELER
v. UGO CARUSI et al.
No. 10373.

United States Court of Appeals
Third Circuit.

Argued March 5, 1951.

Decided April 2, 1951.

Gordon Butterworth, Philadelphia, Pa. (George Dix, Philadelphia, Pa., on the brief), for appellant.

James P. McCormick, Asst. U. S. Atty., Philadelphia, Pa. (Gerald A Gleeson, U. S. Atty., Philadelphia, Pa., F. W. Braden, District Adjudications Officer, Immigration and Naturalization Service, Philadelphia, Pa., on the brief), for appellees.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from the dismissal of a writ of habeas corpus by the court below.

Appellant is a German national. He came to this country as a quota immigrant in 1925. With the exception of a visit to Germany in 1933 he seems to have been here ever since. On December 9, 1941, he was taken into custody as an enemy alien. Following a hearing before an Alien Enemy Hearing Board at Philadelphia, and on the Board's recommendation to the Attorney General, appellant was interned for the duration of the war emergency.

In October 1945, at his request, he was given a hearing before a Repatriation Hearing Board. That Board recommended his removal from the United States because "he was determined to be dangerous to the public peace and safety of the United States." On May 3, 1946 appellant was notified by the Attorney General of a direction for his removal. On April 2,

1947 he was advised by the Immigration and Naturalization Service of the Department of Justice that under the terms of his removal order he could proceed to any country of his choice "* * * if arrangements can be made." On April 15, 1947 he was given a thirty day parole to afford him an opportunity to make such arrangements. He was further advised that if he was unsuccessful in departing from the United States immediate steps would be taken to proceed with removal arrangements and that no extension of the thirty day parole could be granted because of failure to secure permission to enter some other country.

On May 15, 1947 his petition for a writ of habeas corpus was filed. The writ was allowed on June 16, 1947. Thereafter there was a motion to dismiss which was denied. D.C., 72 F.Supp. 805. A motion for reargument was also denied. Following that, considerable time necessarily elapsed in connection with awaiting the progress to, and decision by, the Supreme Court of a case which in some respects resembled the one at bar.[1] Finally, on October 9, 1950, the writ of habeas corpus was dismissed.

Appellant in his first point complains of the hearings accorded him on the ground that they did not conform to judicial procedure.

The President's power to act, as he here acted, stems out of the Alien Enemy Act of 1798 which, with some inconsequential amendments, is the law today. That statute reads:

"Whenever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies. The President is authorized, in any such event, by his proclamation thereof, or other public act, to direct the conduct to be observed, on the part of the United States, toward the aliens who become so liable; the manner and degree of the restraint to which they shall be subject and in what cases, and upon what security their residence shall be permitted, and to provide for the removal of those who, not being permitted to reside within the United States, refuse or neglect to depart therefrom; and to establish any other regulations which are found necessary in the premises and for the public safety." Act of July 6, 1798, 1 Stat. 577, R.S.Sec. 4067, as amended, 40 Stat. 531, 50 U.S.C.A. § 21.

Proceeding under this Act, in 1945, the President issued his Proclamation 2655, 10 Fed.Reg. 8947, 59 Stat. 870. This directed the removal from the United States of all alien enemies "who shall be deemed by the Attorney General to be dangerous to the public peace and safety of the United States". It was under that proclamation that appellant's removal was ordered.

From the beginning, the Act of 1798 has been uniformly recognized as not subject to judicial review. Case of Fries, C.C.D.Pa., 9 Fed.Cas. p. 827, No. 5126; Brown v. United States, 8 Cranch 110, 3 L.Ed. 504; Lockington v. Smith, C.C.D.Pa., 15 Fed.Cas. p. 758, No. 8448.[2] And as Mr. Justice Frankfurter said in Ludecke v. Watkins, 335 U.S. 160 at pages 165 and 166, 68 S.Ct. 1429, at page 1431, 92 L.Ed. 881:

"The power with which Congress vested the President had to be executed by him through others. He provided for the re-

1. United States ex rel. Dorfler v. Watkins, 2 Cir., 171 F.2d 431, certiorari denied 337 U.S. 914, 69 S.Ct. 1154, 93 L.Ed. 1724.

2. See also United States ex rel. Kessler v. Watkins, 2 Cir., 163 F.2d 140; United States ex rel. Hack v. Clark, 7 Cir., 159 F.2d 552; United States ex rel. Schlueter v. Watkins, 2 Cir., 158 F.2d 853; Citizens Protective League v. Clark, 81 U.S. App.D.C. 116, 155 F.2d 290.

moval of such enemy aliens as were 'deemed by the Attorney General' to be dangerous. But such a finding, at the President's behest, was likewise not to be subjected to the scrutiny of courts. For one thing, removal was contingent not upon a finding that in fact an alien was 'dangerous.' The President was careful to call for the removal of aliens 'deemed by the Attorney General to be dangerous.' But the short answer is that the Attorney General was the President's voice and conscience. A war power of the President not subject to judicial review is not transmuted into a judicially reviewable action because the President chooses to have that power exercised within narrower limits than Congress authorized."

Appellant next urges that his right to voluntary departure has been effectively nullified by the action of the United States in requesting foreign governments not to grant him a visa and in notifying the Alcoa Steamship Company of refusal by friendly governments of visas. He asks for opportunity to prove that visas were refused him because of those acts.

As above outlined, the Attorney General advised appellant that under the terms of the removal order affecting him "* * * you may proceed to any country of your choice, if arrangements can be made". Appellant offered to show below that he unsuccessfully attempted to secure a departure visa to every or any known, what he calls, "friendly country outside of the United States." A letter from the State Department to Alcoa Steamship Company is an exhibit in the case. In that letter the Department notified the steamship company that certain German nationals, including appellant, had been determined to be dangerous to hemispheric or national security; that the United States "* * * is issuing orders directing these individuals to depart from the United States within thirty days and stating that if at the end of that period the alien will not have effected this departure, he will be removed to Germany." The letter suggested that great care be taken to make certain that visas presented by any of the aliens listed were currently valid. It concluded by stating, "This letter is not to be construed as a request that you deny to any individual transportation to a country which is actually willing to admit him."

. It is not disputed that the appellant was notified to leave the United States and was given at least thirty days to accomplish that result. But, says appellant, the actions of the United States in fact prevented him from so doing. Appellant alleges this as the sole reason his departure was rendered impossible.

The government concedes that it sent out to friendly governments and to the particular steamship company, information that appellant was deemed a dangerous alien enemy. That notification did not necessarily preclude acceptance of a person so listed by one or more of the countries circularized. And there is no contention by appellant that the United States similarly advised all countries throughout the world. Among other nations not so notified are Germany, Austria, India, Yugoslavia, Iraq, China, Russia, Czechoslovakia, Roumania, Hungary, Bulgaria and Albania. Appellant objects to going back to Germany where he was born. Nor does he wish to go to Russia or to any of its satellites. But he would seem to have a wide choice aside from those nations. For example, Austria, India and Yugoslavia. There is no pretense of an endeavor to obtain a departure visa for any of those countries. It would seem that appellant was faced with no real dilemma. He just did not bother. His choice was not confined to Germany or Russia and those unfortunate lands dominated by the latter. Even if it had been, the statute does not provide that the alien subject to its mandate be cleared to whatever nation he might select. The Act merely allows that alien to leave this country voluntarily. As was said in United States ex rel. Dorfler v. Watkins, supra, 171 F.2d at page 432, "So long as there is any foreign country to which he could have gone, his failure to go there is a 'neglect' or 'refusal' to depart voluntarily. Hence a communication by the State Department to a foreign country, which that

country may or may not heed, cannot be regarded as an unlawful restraint on the alien's voluntary departure. The relators have had ample time to arrange to leave the United States and have made no showing that it was impossible for them to do so."

 As indicated in the above quoted language from the Dorfler decision, the action of the United States in warning its neighbors on this continent and its friends abroad regarding appellant cannot be fairly regarded as infringing on any obligation it may owe appellant. This nation has the right and duty to protect itself directly and indirectly against dangerous alien enemies. The Attorney General, functioning for the President, has deemed appellant to be in that category. He is being removed from the United States for that reason. Ordinary precaution requires that our allies and potential allies be warned in order that they may at least have the opportunity of passing upon the advisability of permitting the entrance and acceptance of such person into their territory. Our government cannot be justly said to be thereby interfering with Jaegeler's choice of domicile. The situation was created by appellant himself and merely recognized by the Attorney General for what he deemed it to be. Thereafter under the powers properly delegated to him by the President he took steps to prevent it from causing harm to the United States or its allies.

The opinion in United States ex rel. Von Heymann v. Watkins, 2 Cir., 159 F.2d 650, 653, is in nowise contrary to the views expressed. In that decision the court considered that the relator was being held in restraint on Ellis Island for the purpose of removal to Germany. The court found that under those circumstances it did "* * * not appear that this relator has ever refused, or except because of his internment, ever neglected, to depart." In the present appeal, Jaegeler had been served with the thirty day order and was in fact paroled during that time to give him the chance, if he desired, of departing voluntarily. United States ex rel. Hoehn v. Shaughnessy, 2 Cir., 175 F.2d 116, 117, certiorari denied 338 U.S. 872, 70 S.Ct. 142, is also cited by appellant. There, with the same sort of notice to foreign governments involved, the alien did not try to leave this country of his own free will. The court said that, assuming such notice, "* * * it would not help the appellant in the absence of any indication that he tried to depart voluntarily and was, for that reason, unable to do so." As already pointed out, it is enough to say in this connection that there is a total absence of a bona fide attempt by Jaegeler, even on his own invalid theory, to enter any one of several countries open to him and not included in the ideological objections he makes.

Lastly, appellant argues that the removal order was in violation of international treaties and agreements to which the United States was and is a party. There is no merit in the point and no need for discussion of it.

The order of the District Court of October 9, 1950, dismissing the writ of habeas corpus, will be affirmed.