**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1263-24

GRACE C. CHEN,

     Plaintiff-Appellant,

v.

UBS BUSINESS SOLUTIONS
US LLC,

     Defendant-Respondent.

_____

Submitted November 6, 2025 – Decided December 3, 2025

Before Judges Gummer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0567-24.

Grace C. Chen, self-represented appellant.

Jackson Lewis, PC, attorneys for respondent (Richard J. Cino and Matthew P. Rocco, on the brief).

PER CURIAM

    Plaintiff Grace C. Chen appeals from an order granting the motion of

defendant UBS Business Solutions US LLC (UBS) to compel arbitration and

dismiss the complaint with prejudice. Based on our de novo review, we affirm the aspect of the order compelling arbitration. Because the trial court should have stayed the case pending arbitration instead of dismissing it, we vacate the aspect of the order dismissing the complaint and remand the case for entry of an order staying the case in the Law Division pending arbitration. Plaintiff also appeals from a subsequent order staying the arbitration for ninety days. We dismiss the appeal of that order as moot.

I.

Plaintiff filed a complaint in the Law Division in February 2024. According to plaintiff, she was employed by defendant in New Jersey for approximately eight months, from October 25, 2021, to June 28, 2022, when defendant advised her it was terminating her position due to a "business restructuring." She described herself as a New York resident and a "Chinese American." She alleged defendant had violated the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50, and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to e-17, by subjecting her to a hostile work environment and terminating her employment due to her race, ethnicity, and national origin. Defendant removed the case to the United States District Court for the District of New Jersey. The District Court subsequently

2

granted plaintiff's motion to amend the complaint to eliminate the Title VII claims and remand the case.

Back in the Law Division, defendant moved to dismiss the complaint and compel plaintiff to proceed to arbitration. In support of the motion, defendant submitted the certification of Julie R. Stein, defendant's director and counsel. According to Stein, on September 17, 2021, defendant sent plaintiff a letter offering her employment with defendant as "Global Data Protection Legal Lead within the Group Functions Legal Area of [UBS]." The letter defined the "Offer Letter" as "[t]his offer letter, including all of its addenda . . ." and contained a section entitled "Entire Agreement," which included the following language: "This Offer Letter, along with the addenda and attachments incorporated by reference herein, contains the entire understanding and agreement between the parties concerning the subject matter hereof . . . . " The Offer Letter stated "[e]xcept as otherwise specifically provided, this Offer Letter shall be governed, construed and enforced in accordance with the laws of the State of New York without regard to conflict of law principles."

The Offer Letter also contained the following provision regarding arbitration:

> Binding Mutual Arbitration Agreement and Class, Collective Representative Action Waiver.

A-1263-24

UBS values each of its employees and fosters good relations with, and among, all of its employees, UBS recognizes, however, that disagreements occasionally occur between an individual employee and UBS, or between employees in a context that involves UBS. UBS believes that the resolution of such disagreements is best accomplished by internal dispute resolution and, where that fails, by external arbitration. For these reasons, UBS has adopted an Employment Arbitration Agreement and Class, Collective and Representative Action waiver ('Arbitration Agreement') attached hereto and incorporated by reference herein. By signing this Offer Letter, you acknowledge that you have received and read the Arbitration Agreement and that you agree to all of its terms.

Stein certified that plaintiff had electronically signed the Offer Letter on September 18, 2021, a fact plaintiff does not dispute. The following language appeared in bold above plaintiff's electronic signature:

BY ACCEPTING THIS OFFER OF EMPLOYMENT THROUGH MY SIGNATURE BELOW, I AM AGREEING TO BE BOUND BY THE ATTACHED ARBITRATION AGREEMENT, AND BY THE TERMS AND CONDITIONS SET FORTH IN THE COMPENSATION ADDENDUM; NOTICE OF TERMINATION, CONFIDENTIALITY, NON-SOLICITATION AND OTHER EMPLOYMENT TERMS ADDENDUM; AND THE AGREEMENT CONCERNING THE HANDLING OF CONFIDENTIAL INFORMATION AND THE ASSIGNMENT OF EMPLOYEE INVENTIONS, ALL OF WHICH ARE ATTACHED TO THIS OFFER LETTER. I UNDERSTAND THAT THE ARBITRATION AGREEMENT REQUIRES THAT

4

BOTH UBS (AS DEFINED IN THE ARBITRATION AGREEMENT) AND I RESOLVE ANY COVERED CLAIMS (AS DEFINED BY THE ARBITRATION AGREEMENT) IN FINAL AND BINDING ARBITRATION ON A NON-CLASS, NON-COLLECTIVE, AND NON-REPRESENTATIVE ACTION BASIS. I ACKNOWLEDGE AND AGREE THAT I HAVE READ ALL OF THE ATTACHMENTS TO THIS OFFER LETTER, UNDERSTAND THEM, AND AGREE TO BE BOUND BY THEM.

In opposition to the motion, plaintiff submitted copies of September 17, 2021 emails from UBS Human Resources, advising plaintiff her "offer materials [we]re ready for review at UBS Offer Letter Portal," asking her to "please carefully review each action" once she had logged into the portal, and providing instructions on how to create a password for the UBS Offer Letter Portal. Plaintiff also submitted what plaintiff described as a "copy of the entire contents of the Download Package in its original form as downloaded from the UBS Offer Letter Portal on the signing date."

According to plaintiff, the Download Package included a document entitled, "EMPLOYMENT ARBITRATION AGREEMENT AND CLASS, COLLECTIVE AND REPRESENTATIVE ACTION WAIVERS." The Arbitration Agreement contained the following provision:

Binding Mutual Arbitration. You and UBS agree that any Covered Claims (defined below) will be resolved

5

A-1263-24

by final and binding arbitration as set forth in this Arbitration Agreement. The Arbitration Agreement shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA") and the law of the State of New York to the extent New York law is not inconsistent with the FAA and without regard to conflicts of law principles. This Arbitration Agreement applies to both you and UBS and makes arbitration the required and exclusive forum for the resolution of all Covered Claims (defined below) between you and UBS. Therefore, you and UBS are giving up your and its right to a jury trial, in any forum, of Covered Claims.

The Arbitration Agreement defined Covered Claims as:

Except for the Excluded Claims (defined below), and to the fullest extent permitted by law, Covered Claims include any and all claims or disputes between you and UBS, . . . arising out of or which arose out of, or in any way relating to your prospective or actual employment, hiring, compensation, benefits or terms and conditions of employment with UBS . . . or the termination thereof, including but not limited to . . . statutory discrimination, harassment and retaliation claims, and any claims arising under or relating to any federal, state or local constitution, statute or regulation, including, without limitation . . . Title VII of the Civil Rights Act . . . and any and all other federal, state or local . . . discrimination law . . . and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized. . . .

The Arbitration Agreement also defined Excluded Claims:

Excluded claims. The following claims in disputes are not subject to this Arbitration Agreement: (i) applications by either party for temporary or

6

A-1263-24

preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration; (ii) claims for workers' compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation benefits; (iii) claims for unemployment compensation benefits; (iv) claims under the National Labor Relations Act, as amended, within the exclusive jurisdiction of the National Labor Relations Board; and (v) any claim that is expressly precluded from arbitration by a federal statute. Nothing in this Arbitration Agreement shall prohibit you from filing a charge or complaint or participating in an investigation resulting from the filing of a charge or complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), the U.S. Department of Labor ("DOL"), the Occupational Safety and Health Administration ("OSHA"), or any other federal, state, or local administrative agency. . . .

The copy of the Arbitration Agreement in the record contains plaintiff's electronic signature.

According to plaintiff, the Download Package also contained a one-page notice from the New Jersey Department of Labor and Workforce Development (NJDOL) entitled "Right to be Free of Gender Inequity or Bias in Pay, Compensation Benefits or Other Terms and Conditions of Employment" (NJDOL Notice). The NJDOL Notice contained two sections, one entitled "FEDERAL LAW" and the other entitled "NEW JERSEY LAW." Under the NEW JERSEY LAW heading, NJDOL described the NJLAD as "prohibit[ing]

7

employment discrimination based on, among other things, an individual's sex" and stated "[NJ]LAD claims can be filed with the New Jersey Division on Civil Rights (NJDCR) or directly in court." The bottom of the notice contains the logo of the NJDOL. Plaintiff electronically signed an acknowledgment that she had received the NJDOL Notice.

On November 15, 2024, the trial court entered an order granting defendant's motion, dismissing the complaint with prejudice, and compelling plaintiff to proceed to arbitration within thirty days. In an attached written opinion, the court noted that plaintiff had opposed the motion by arguing the Arbitration Agreement did "not extend to claims under NJLAD." Citing Hirsch v. Amper Financial Services, LLC, 215 N.J. 174, 188 (2013), the court found a binding arbitration contract existed and that plaintiff had "explicitly acknowledged and assented to the Arbitration Agreement." The court rejected plaintiff's other arguments, including her argument defendant had not delivered the NJDOL Notice in a manner consistent with N.J.A.C. 12:2-2.3(d) or that the inclusion of the NJDOL Notice in her onboarding paperwork created an ambiguity in the terms of the Arbitration Agreement. The court concluded plaintiff's case fell within the scope of the Arbitration Agreement.

Plaintiff moved to stay arbitration pending appeal pursuant to Rule 2:9-5(c). The court granted the motion and entered an order on December 6, 2024, staying the November 15, 2024 order for ninety days. The order contained the following directive: "If the underlying appeal has not been decided at the expiration of the stay, the parties may refile with the [c]ourt as appropriate." The record is devoid of any indication either party sought an additional stay from the trial court or this court.

Plaintiff appeals from the November 15, 2024 and December 6, 2024 orders. She "does not dispute that a valid arbitration agreement exists" under the first prong of what she calls the two-pronged Hirsch test but contends the court "improperly analyzed scope issues." She asserts "her consent to arbitration did not encompass NJLAD claims." She faults the court for viewing the Arbitration Agreement in "isolation" and not treating the "Offer Documents" as an "integrated agreement." She urges this court to apply promissory estoppel to prevent arbitration of her NJLAD claims. She also claims the court erred in its interpretation of N.J.A.C. 12:2-2.3(d) and in staying the arbitration for only ninety days.

The interpretation of an arbitration agreement and its enforceability are questions of law we review de novo. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019); Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014). We also review de novo the question of whether a party agreed to arbitrate. Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 561 (App. Div. 2022) (reviewing de novo "the question whether plaintiff agreed to arbitrate because that issue involves the application of established facts to the legal question of what constitutes assent to a contract"). Having engaged in that plenary review, we perceive no reason to disturb the trial court's decision to compel arbitration.

As a threshold matter, we note the trial court based its analysis of the Arbitration Agreement on New Jersey law and plaintiff in her appellate briefs largely relies on New Jersey law. However, according to its express terms, the Arbitration Agreement is governed by the FAA "and the law of the State of New York to the extent New York law is not inconsistent with the FAA and without regard to conflicts of law principles." "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public

policy." Instructional Sys., Inc. v. Comput. Curriculum Corp., 130 N.J. 324, 341 (1992); see also Grandvue Manor, LLC v. Cornerstone Contracting Corp., 471 N.J. Super. 135, 142 (App. Div. 2022) (applying New York law based on the parties' contractual choice of law to determine the enforceability and construction of an arbitration provision). With no basis to conclude the choice-of-law provision in the Arbitration Agreement violates New Jersey's public policies, we consider applicable federal and New York law in our de novo review of the Arbitration Agreement.

As expressed in the FAA and caselaw interpreting it, a strong federal policy favoring arbitration exists. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006) (holding the FAA "embodies the national policy favoring arbitration"). The public policies of New York and New Jersey also favor arbitration. See Wu v. Uber Techs., Inc., 260 N.E.3d 1060, 1068 (N.Y. 2024) (recognizing New York's "long and strong public policy favoring arbitration" (quoting In re Smith Barney Shearson v. Sacharow, 689 N.E.2d 884, 889 (N.Y. 1997))); Arafa v. Health Express Corp., 243 N.J. 147, 170 (2020) (relying on "the well-recognized national policy and the established State interest in favoring arbitration" (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002))).

On a motion to compel arbitration, "a court must determine, 'in the first instance . . . whether parties have agreed to submit their disputes to arbitration and, if so, whether the disputes generally come within the scope of their arbitration agreement.'" Degraw Constr. Grp., Inc. v. McGowan Builders, Inc., 58 N.Y.S.3d 152, 154 (N.Y. App. Div. 2017) (quoting Sisters of St. John the Baptist, Providence Rest Convent v. Geraghty Constructor, 494 N.E.2d 102, 103 (N.Y. 1986)); see also Hirsch, 215 N.J. at 187-88 (applying the same two-step procedure under New Jersey law).

Arbitration agreements are contracts, and courts "enforce them according to their terms." Rent-A-Center, West, Inc. v. Jackson, 561 U.S, 63, 67 (2010). Thus, to determine whether and what parties agreed to arbitrate, courts generally look to "ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also Wu, 260 N.E.3d at 1069 (holding analysis of an arbitration agreement "is governed by state contract-law principles, provided that those rules do not expressly or covertly discriminate against agreements to arbitrate" (citing Kindred Nursing Centers L.P. v. Clark, 581 U.S. 246, 251 (2017))). "[T]he Supreme Court has . . . made clear that '[a]rbitration is strictly a matter of consent.'" Wu, 260 N.E.3d at 1069 (second alteration in the original) (quoting Coinbase, Inc. v. Suski, 602

12

U.S. 143, 148 (2024)) (internal quotation marks omitted). Under New York law, "a binding contract requires an objective 'manifestation of mutual assent,' through either words or conduct, to the essential terms comprising the agreement." Id. at 1071 (quoting Stonehill Cap. Mgmt. LLC v. Bank of the W., 68 N.E.3d 683, 689 (N.Y. 2016)).

The answer to the first question – did the parties agree to submit their disputes to arbitration – is yes, and plaintiff does not dispute otherwise. As she states in her reply brief, "she does not dispute that she voluntarily and knowingly signed the Arbitration Agreement and does not dispute the validity of the Arbitration Agreement."

Regarding the scope of the Arbitration Agreement, plaintiff does not challenge the meaning of the language of the agreement, which provided she was "giving up [her] . . . right to a jury trial, in any forum, of Covered Claims," which included:

> [A]ll claims . . . in any way relating to your . . . employment . . . or the termination thereof, including but not limited to . . . statutory discrimination, harassment and retaliation claims, and any claims arising under or relating to any . . . state . . . statute or regulation, including, . . . any and all . . . state . . . discrimination law . . . and any and all . . . state . . . statutory . . . causes of action now or hereafter recognized.

13

The definition encompassed plaintiff's NJLAD claims. And plaintiff does not assert the language in the Excluded Claims definition of the Arbitration Agreement somehow excluded her NJLAD claims from the parties' agreement to arbitrate.

Instead, plaintiff faults defendant for including the NJDOL Notice in the Download Package and claims her "NJLAD claims fall outside the scope of the Arbitration Agreement due to the ambiguity UBS created through [its] improper delivery and misleading presentation of the [NJDOL Notice]." But the inclusion of the state-required notice in the Download Package did not create an ambiguity in the clear language of the Arbitration Agreement.[1]

Although the NJDOL Notice was, like the Arbitration Agreement, an addendum to the Offer Letter, it obviously was a distinct and separate document from the Arbitration Agreement plaintiff executed. In its notice, the NJDOL

---

[1] On appeal, plaintiff claims that in providing a copy of the NJDOL Notice in the Download Package accessible through the Offer Letter Portal, defendant failed to comply with the posting and distribution requirements of N.J.A.C. 12:2-2.3(d). However, in the complaint, plaintiff did not reference the NJDOL Notice, did not allege defendant had violated N.J.A.C. 12:2-2.3(d), and did not base a cause of action on any purported violation of that regulation. Accordingly, we do not address her assertion defendant violated that regulation. However, we consider and address plaintiff's argument about whether the inclusion of the NJDOL Notice created an ambiguity in the language of the Arbitration Agreement.

provides employees with information regarding federal and New Jersey law. Even though the Arbitration Agreement expressly states it "shall be governed by and interpreted in accordance with the [FAA] and the law of the State of New York" and the Offer Letter also states it is governed by New York law, plaintiff relies on language contained in the NEW JERSEY LAW section of the NJDOL Notice to support her argument. In that section of its Notice, the NJDOL simply informs employees generally that NJLAD claims "can be filed with the [NJDCR] or directly in court." It does not guarantee an employee a right to file a NJLAD claim in court when the employee has signed a contract in which she gave up the right to a jury trial of claims based on state discrimination law and state statutory causes of action and agreed to submit those claims to arbitration.

Plaintiff's promissory-estoppel argument is equally unavailing. A party asserting promissory estoppel must demonstrate the existence of "a clear and unambiguous promise." Clarke v. Clarke, 233 N.Y.S.3d 580, 582 (N.Y. App. Div. 2025) (quoting Rock v. Rock, 953 N.Y.S.2d 165, 167 (N.Y. App. Div. 2012)); see also Goldfarb v. Solimine, 245 N.J. 326, 339-40 (2021) (referencing the "clear and definite promise" element of a promissory-estoppel claim (quoting Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 253 (2008))). The NJDOL Notice or its inclusion in the Download Package

does not constitute a clear, unambiguous, or definite promise by defendant that, contrary to the executed Arbitration Agreement, plaintiff could pursue her NJLAD claims in court.

The Arbitration Agreement was valid and enforceable. Plaintiff's NJLAD claims fell within the scope of the Arbitration Agreement based on the Agreement's clear language. The inclusion of the NJDOL Notice in the Download Package did not create an ambiguity in that language. Accordingly, the trial court did not err in granting the aspect of defendant's motion seeking to compel arbitration, and we affirm that part of the order.

Although we affirm the aspect of the November 15, 2024 order compelling arbitration, we vacate the provision of the order dismissing the case with prejudice. Because the Arbitration Agreement was expressly governed by the FAA, the court should have stayed the case, not dismissed it. See Antonucci, 470 N.J. Super. at 567 (holding "a court action should be stayed if the action involves 'any issue referable to arbitration'" under the FAA (quoting 9 U.S.C. § 3)).

Finally, we turn to plaintiff's appeal of the December 6, 2024 order. The ninety-day stay provided in that order ended on March 6, 2025. Plaintiff's appeal of the order was rendered moot by that passage of time and by this opinion

A-1263-24

affirming the November 15, 2024 order. Accordingly, we dismiss as moot plaintiff's appeal of the December 6, 2024 order. See In re Protest of Contract Award for Project A1150-08, N.J. Exec. State House Comprehensive Renovation & Restoration, 466 N.J. Super. 244, 260 (App. Div. 2021) (holding a court will not decide a case if it cannot grant effective relief and will generally dismiss a moot appeal).

In sum, we affirm the aspect of the November 15, 2024 order compelling arbitration. We vacate the aspect of that order dismissing the case with prejudice and remand for entry of an order staying the case in the Law Division pending arbitration. We dismiss as moot plaintiff's appeal of the December 6, 2024 order.

Affirmed in part, dismissed in part, vacated in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division